CLARA E. SCOTT'S CASE.

Washington.    Opinion September 8, 1922.

*Method "C" in the Workmen's Compensation Act properly adopted for computation.*
*On the facts there was evidence competent to sustain*
*the award as to amount.*

Appeal under Workmen's Compensation Act. The employee, one Leavitt, entered the employment of the St. Croix Paper Company on June 22, 1921, and worked until August 1, 1921, when he was injured, his weekly wages being $19.50. During the previous season he had worked for the same Company from August 1, 1920, to December 4, 1920, at which time the saw mill was closed until it reopened June 22, 1921. His wages during that season were 53 cents per hour for a ten-hour day. It was a seasonal employment. The chairman of the Industrial Accident Commission applied method "C" of Public Laws 1919, Chap. 238, Sec. 1, Par. IX in determining the "average weekly wages" and fixed the amount of compensation at two thirds of $19.50, or $13 per week for a period of 300 weeks from the date of the injury.

On appeal. The claimant is a dependent of William E. Leavitt deceased, who was what is known as a resaw man in the employment of the St. Croix Paper Company of Woodland. Death resulted from an injury received by him on August 1, 1921, in the course of and arising out of his employment. The chairman of the Industrial Accident Commission granted compensation under method "C" of the Workmen's Compensation Act; and the employer appealed. Appeal dismissed. Decree of sitting Justice affirmed with costs.

This case is fully stated in the opinion.

*H. H. Murchie,* for claimant.

*Curran & Curran,* for respondent.

SITTING: CORNISH, C. J., SPEAR, HANSON, PHILBROOK, MORRILL, WILSON, JJ.

CORNISH, C. J. This is an appeal by the employer from a decree awarding compensation under the Workmen's Compensation Act.

The facts are agreed upon. The claimant is a dependent of William E. Leavitt deceased, who was what is known as a resaw man in the employ of the St. Croix Paper Company of Woodland. Death resulted from an injury received by him on August 1, 1921, in the course of and arising out of his employment.

The single issue before this court is whether the Chairman of the Industrial Accident Commission erred as a matter of law in determining the compensation to be paid. This problem necessarily comprises two elements, first, the proper method to be adopted for computation, which is a question of law, and second, the amount awarded under such adopted method, which is a question of fact.

The Workmen's Compensation Act provides, generally speaking, for three different methods of computation, depending upon the facts arising under the particular claims. Public Laws 1919, Chap. 238, Sec. 1, Par. IX.

The facts of this case are that Mr. Leavitt entered the employ of the St. Croix Paper Company on June 22, 1921, and worked until August 1, 1921, the date of the injury, and for that period was paid the sum of $3.25 per day or a weekly wage of $19.50. During the previous season he had worked from August 1, 1920, to December 4, 1920, for which period he was carried on the payroll at the wage of fifty-three cents per hour for a ten-hour day. It was not a continuous but a seasonal employment, the mill in which Leavitt worked being closed from December 4, 1920, until it reopened on June 22, 1921. The average season for similar mills in that vicinity is seven months, from the first day of May to the first day of December.

1. The first prescribed method of computation is to be adopted when the injured employee has worked in the same employment in which he was working at the time of the accident during substantially the whole of the year immediately preceding his injury. It then becomes a mere problem in mathematics. "The average weekly wages" are determined by multiplying the average daily wage by three hundred, the number of working days in a year, and dividing by fifty-two, the number of weeks in a year. Public Laws 1919, Chap. 238, Sec. 1, Par. IX (a).

That method was not and could not be adopted here because Mr. Leavitt had not worked in this employment during substantially the whole year immediately preceding the injury.

2.  The second prescribed method applies when although the injured employee has not worked the required time, the same mathematical computation can be made based upon the wages of some other employée of the same class who has worked substantially the whole of such immediately preceding year in the same or a similar employment, in the same or a neighboring place.  Public Laws 1919, Chap. 238, Sec. 1, Par. IX, (b).  *Thibeault's Case*, 119 Maine, 336.

This provision also is inapplicable in the pending case because the employment being seasonal, no employee can be found who will meet the requirement of substantially a whole year's work immediately preceding the accident.

3.  This leaves the third method for consideration, which was obviously prescribed to meet the varied situations which paragraphs (a) and (b) could not fit.  Paragraph (c), transposing the clauses for the sake of clarity, provides as follows:  "In cases where the foregoing methods of arriving at the 'average weekly wages, earnings or salary' of the injured employee cannot reasonably and fairly be applied, such 'average weekly wages' shall be taken at such sum as shall reasonably represent the weekly earning capacity of the injured employee at the time of the accident in the employment in which he was working at such time, having regard to the previous wages, earnings or salary of the injured employee and of other employees of the same or most similar employment in the same or a neighboring locality."

The distinctions between method "c" and the previous "a" and "b" are clearly marked.  In "a" and "b" the "average weekly wages, earnings or salary" are determined with mathematical exactness.  It is a matter of multiplication and division.  The quotient represents the weekly average in fact as well as in name.  The factors are all present from which such accurate reckoning can be made.  But in many cases, where those factors are lacking, as in the case at bar, some other method needed to be devised in order to fairly compensate injured workmen.  The average weekly wage could not be computed in fact from actual earnings of a year, and therefore an arbitrary method must be found, and "c" is that arbitrary and, in a sense, artificial method.  In "a" and "b" the average weekly wage is positively ascertained from given data.  In "c" such wage is "taken" or assumed on an entirely different

basis. In "a" and "b" the basis of the average weekly wage is actual earnings for a year; in "c" the basis is the weekly earning capacity in the same employment at the time of the accident. Such earning capacity in "c" is substituted for actual earnings under "a" and "b", and is made to arbitrarily stand for and represent the average weekly wage called for by the act as the basis of recompense. It is average weekly wage in name but not necessarily in fact.

The chairman adopted method "c" in the case at bar, and there was no error in law in so doing. It was the only method applicable.

4. In applying this method the statute calls attention to certain possible factors but leaves the determination as to earning capacity to the sound judgment of the chairman.

Those factors are the previous wages of the injured employee in the same employment, but not for any stated period; the previous wages of other employees in the same or most similar employment in the same or a neighboring locality, but again not for any specified time; and of course the chairman should have regard for the actual wages of the employee at the time of his injury. From all these he is to fix a sum which shall "reasonably represent the weekly earning capacity at the time of the accident" in this employment. This calls for the exercise of judgment and discretion upon proven facts.

Such conclusion is not a matter of law reviewable on appeal if there is some competent evidence to support it. In the case at bar it appears that during the sawing season of 1920, Mr. Leavitt received $5.30 per day in the same employment. In the season of 1921 he had received $19.50 per week during the six weeks of his labor up to the time of the accident. It is further agreed by the parties that the wage being paid Mr. Leavitt at the time of the injury was a fair estimate or average of the wages paid men working in that employment in similar kinds of mills in Woodland during the season of 1921. All the facts, for which the statute says the chairman shall have regard in making up his estimate, were in evidence here, and from them all he fixed the weekly earning capacity at the time of the accident in this employment as $19.50, two thirds of which or $13 per week for a period of 300 weeks beginning August 1, 1921, he awarded as the amount of

compensation to which the claimant was entitled. There was certainly competent evidence warranting this conclusion.

> *Appeal dismissed.*
> *Decree of sitting Justice*
> *affirmed with costs.*